Herbert J. BRYANT, Robert R. Hewett, P. L. Bell, L. H. Stanley and C. C. Brown, Plaintiffs,

v.

The STATE BOARD OF ASSESSMENT OF the STATE OF NORTH CARO-LINA, the Board of County Commissioners for Brunswick County, North Carolina, public body corporate, and Douglas Hawes, Tax Supervisor and Tax Collector for Brunswick County, North Carolina, Defendants.

Civ. A. No. 1151.

United States District Court
E. D. North Carolina,
Wilmington Division.

Dec. 13, 1968.

Conrad O. Pearson, Durham, N. C., Lisbon C. Berry, Jr., Wilmington, N. C., J. LeVonne Chambers, Charlotte, N. C., and Jack Greenberg and Michael Meltsner, New York City, for plaintiffs.

E. J. Prevatte, Southport, N. C., for Board of County Comrs., and Tax Supervisor and Tax Collector of Brunswick County.

T. Wade Bruton, Atty. Gen. of North Carolina, Bernard A. Harrell, and Charles D. Barham, Jr., Asst. Attys. Gen., for defendant, State Bd. of Assessment.

Before CRAVEN, Circuit Judge, and STANLEY and LARKINS, District Judges.

CRAVEN, Circuit Judge:

In the Machinery Act of 1939, the General Assembly of North Carolina established both system and method for ad valorem taxation of real property. In that part of the Machinery Act now codified as NCGS § 105–323, it was provided that list takers shall make out, "on forms approved by the State Board of Assessment," tax records, which may consist of a scroll designed primarily to show tax valuations and a tax book designed primarily to show the amount of taxes, or which may consist of one record designated to show both. The same section made mandatory that such records, whether separate or combined, "shall be divided into four parts:

"(1) White individual taxpayers (including lists filed by corporate fiduciaries for white individual beneficiaries);

"(2) Colored individual taxpayers (including lists filed by corporate fiduciaries for colored individual beneficiaries);

"(3) Indian individual taxpayers (including lists filed by corporate fiduciaries for Indian individual beneficiaries); and

"(4) Corporations, partnerships, business firms and unincorporated associations."

In 1963 the General Assembly modified its command, but without repealing the language stated. It simply added a new subparagraph (b) in which the tax supervisor, with the approval of the Board of County Commissioners, was authorized to direct the list takers "to make out the tax scroll and tax book in such other order as may more conveniently contribute to the development of tax information."

■ Plaintiffs, Herbert J. Bryant, Robert R. Hewett, P. L. Bell, L. H. Stanley and C. C. Brown, are Negro citizens of the United States and the State of North Carolina. They reside and own property in Brunswick County, North Carolina. They prosecute this class action for the benefit of themselves and all Negro citizens. The relief sought is a decree declaring that § 105–323 of the General Statutes of North Carolina is void as repugnant to the Due Process and Equal Protection Clauses of the Fourteenth Amendment of the Constitution of the United States to the extent that this statute either authorizes or requires separate listings according to race of property owners for ad valorem tax purposes. We think they are entitled to the relief sought.

The parties have stipulated that the court may determine the issues in this proceeding upon the stipulations, interrogatories and answers to them, depositions, and briefs, and have further stipulated that the court decide the matter without oral argument. According to the Tax Supervisor and Tax Collector of Brunswick County, whose testimony is not disputed, it is plain that the tax books and tax records of Brunswick County are maintained separately according to race. Abstracts are kept in separate books, one for Negro and one for white. Tax receipts are kept in the same book, but are kept in separate, distinct parts of that book. The tax scroll, (one book for the entire county) summarizes the information contained in the abstracts and is kept separate according to race. There is, moreover, a "card system," the purpose of which the testimony does not make clear (it may be an index) which is also kept separate according to race. Information that is

sent from Brunswick County to the "State Tax Office" is transmitted "according to race." Even Negro businesses are listed in a different section of the tax property book from the listings of white businesses. Except for the Leland School District, about which more later, the tax supervisor and collector repeatedly testified, and his testimony is undisputed, that there is no reason whatsoever for the maintenance of racially separate tax books and records except that "it is in the statute." As he closed his direct testimony, he was asked again for the third time:

"Q Maybe we have covered this, but I would like to ask again if you know of any reason why it is necessary for you to maintain racially separate tax listings in Brunswick County?

"A None, other than the state statute."

Brunswick County asserts that the 1947 Session Laws of North Carolina authorized the holding of a special election in the then all-white school district known as Leland School District, and that pursuant thereto the voters within the district assessed themselves a special tax to supplement the school funds available from state and county; that since 1948 or 1949 this special tax has been regularly assessed against white taxpayers *only* residing within this school district and has been interpreted by the tax collector as imposing no tax upon Negroes within the district.[1] The obvious question of constitutionality of such a tax assessment upon white citizens only is not presented by the pleadings and is not before us. Although the brief filed for Brunswick County calls the matter to our attention, it is significant, we think, that the brief does not urge that the

special tax cannot be collected without continuation of tax listing by race. At one point the tax collector testified that he could just as easily gather the necessary information to permit this special assessment from a single set of tax books, and at another point he said there would be some difficulty, but his testimony is perfectly clear that the maintenance of racially separate books and records in the tax office is not necessary to the implementation and collection of the special assessment in the Leland School District.

Neither Brunswick County nor its tax collector argues to us that the statute is constitutional.[2] The position of the county and of the other defendants comes to this: that the statute may be "unconstitutional" in an abstract or hypothetical sense of the word but that in its implementation it is harmless and has resulted in no detrimental racial discrimination against Negroes. We disagree. Such a statute is, we think, a vestigial remnant of an era of second class citizenship for persons whose pigmentation does not come within the ambiguity of the statutory adjective "white." The keeping of public records according to race, absent a legitimate public purpose and objective, is itself, we think, an indignity upon the minority group, whether it be Negro or Indian. The very concept is foreign to the American melting pot idea.

It is urged upon us that the statute, as amended in 1963, no longer requires the separation of records by race. It is true, of course, that the new subsection (b) set out in the margin permits the tax supervisor, with the approval of the Board of County Commissioners, to substitute some "other order"

1. There is a conflict in the testimony as to whether or not there are now Negroes residing within the Leland School District.

2. "Brunswick County does not submit an argument on the constitutionality of the statute, to the contrary, the County adopts the position that should this Court declare unconstitutional, this statute, then the County of Brunswick will immediately adjust or change its tax records without further ado to comply with the directive of the Court; the position then of the County of Brunswick could be stated as saying that Brunswick County encourages a directive from this Court on the use of the statute in question." (Br., County of Brunswick, p. 3.)

in lieu of the racial separation. We think the impact of the statute remains the same. Four categories are set out in separate numbered paragraphs, and although some other order may be substituted, it must first meet with the approval of the Board of County Commissioners, and secondly, must more conveniently contribute to the development of tax information. Moreover, although an alternative order is permitted, none is suggested by the statute. More significantly, the testimony of the perfectly candid Tax Collector of Brunswick County clearly reveals his interpretation of the statute, which is sometimes more important than that of judges and lawyers. Time and again he responded, "None but the statute" to the question, "Is there any reason for separate racial maintenance of the tax records?" The legislative subtlety quite apparently escaped the tax collector and is lost upon those engaged in the implementation of the Tax Machinery Act. We think the 1963 amendment does not save the statute. In Hamm v. Virginia State Bd. of Elections, 230 F.Supp. 156 (E.D.Va. 1964), Judge Bryan, writing for the court, said:

> "The 'separate but equal' racial doctrine was condemned a decade ago in Brown v. Board of Education, 347 U. S. 483, 74 S.Ct. 686, 98 L.Ed. 873 (1954). Subsequent decisional law has made it axiomatic that no State can directly dictate or casually promote a distinction in the treatment of persons solely on the basis of their color. To be within the condemnation, the governmental action need not effectuate segregation of facilities directly. Cf. Anderson v. Martin, 375 U.S. 399, 402, 84 S.Ct. 454, 11 L.Ed.2d 430 (1964). The result of the statute or policy must not tend to separate individuals by reason of difference in race or color. No form of State discrimination, no matter how subtle, is permissible under the guarantees of the Fourteenth amendment freedoms. See, e.g., Burton v. Wilmington Park-

ing Authority, 365 U.S. 715, 721–26, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961); National Ass'n for Advancement of Colored People v. State of Alabama, ex rel. Patterson, 357 U.S. 449, 463, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958)." Id. at 157–158.

If the statute, as amended, does not dictate, as the tax collector thought, clearly it promotes a distinction in the treatment of persons solely on the basis of their color. Absent some legitimate purpose to be served by such racially separate record keeping, and there is none here, that is enough to invalidate the statute. In the context of this case, it is not necessary that we find from the evidence in the record a clear demonstration of invidious discrimination that may well result from such separation of records. Certainly the opportunity for discrimination in jury selection is present. See NCGS § 9–1 et seq. See also Whitus v. Georgia, 385 U.S. 545, 87 S.Ct. 643, 17 L.Ed.2d 599 (1967).

We reject the contention of the State Board of Assessment that it is not involved with the manner and mode in which the tax records of a county are maintained. The Board of Assessment concedes that it has authority to publish a pamphlet of instructions for the use of county tax officials (NCGS § 105–275(2)), and that it has the duty of advising local tax officials (NCGS § 105–275(1)). It also concedes that in its discretion it may prescribe the forms, books and records that shall be kept in the valuation and collection of taxes. The concessions destroy the contention.

An appropriate judgment will be entered declaring that part of NCGS § 105–323(a) that requires tax records for each township to be divided into four parts according to race and business entity void as repugnant to the Equal Protection Clause of the Fourteenth Amendment. The result will be, excising the invalid portion of the statute, that records for each township shall be divided into two parts: (a) individual taxpayers, and (b) corporations, partner-

ships, business firms and unincorporated associations.

Although subsection (b) of G.S. § 105–323 obviously refers to the prior portion of subsection (a) now held invalid, in itself it contains no constitutional flaw. We cannot be sure that the legislative purpose was entirely dependent upon the validity of the portion of the statute we now hold invalid. So long as subsection (b) is not construed by reference to the invalid portion as authorizing an unconstitutional separation of records by race, it is not invalid and may serve the useful purpose of enlarging the discretion of the tax supervisor with the approval of the Board of County Commissioners to choose some order of bookkeeping that may more conveniently contribute to the development of tax information. We thus hold subsection (b) to be constitutional.

All of the defendants, their agents, employees and successors, and all persons acting in concert and participating with them, will be enjoined from administering, executing or in any way enforcing that part of subsection (a) of Section 105–323 that requires separate listing of taxes from property owners according to race.

Brunswick County has commendably offered, in the event that we declared this statute unconstitutional, immediately to adjust and change its tax records without further ado to comply with the directive of this court. It is now apparent to all that the use of tax records separated according to race in the selection of juries imperils the validity of criminal convictions, see Whitus v. Georgia, supra. Since no evidence has been offered indicating that there has been jury discrimination in Brunswick County resulting from such separate records, we think it unnecessary to grant, and therefore decline to grant the prayer of plaintiffs to enjoin the County Commissioners of Brunswick County from using tax listings for the compilation of jury venires where such tax listings are kept separate on the basis of race and color.