James GODWIN et al., Plaintiffs,

v.

**JOHNSTON COUNTY BOARD OF EDU-CATION, a public body corporate; North Carolina State Board of Education, a public body corporate; and Dr. A. Craig Phillips, North Carolina State Superintendent of Public Instruction, Defendants.**

Civ. A. No. 2114.

United States District Court
E. D. North Carolina,
Raleigh Division.

July 8, 1969.

Conrad O. Pearson, Durham, N.C., J. LeVonne Chambers, Adam Stein, James E. Ferguson, II and James E. Lanning, Charlotte, N.C., for plaintiffs.

T. W. Bruton, Atty. Gen. of N.C., Ralph Moody, Deputy Atty. Gen., and Andrew A. Vanore, Jr., Raleigh, N.C., Staff Atty., for defendants N.C. State Board of Education and A. Craig Phillips, N.C. Supt. of Public Instruction.

Albert A. Corbett, Smithfield, N.C., for defendant Johnston County Bd. of Education.

## OPINION

BUTLER, Chief Judge.

This is a class action filed on April 4, 1968 by Negro parents and children of Johnston County seeking injunctive relief against alleged racially discriminatory practices by the defendants in the administration of the Johnston County Public Schools. The plaintiffs named as defendants the Johnston County Board of Education and, in addition, the North Carolina State Board of Education and Dr. Charles F. Carroll, North Carolina State Superintendent of Public Instruction. (Since the filing of the suit, Dr. A. Craig Phillips has been elected North Carolina State Superintendent of Public Instruction and has been substituted for Dr. Carroll as a party-defendant.)

All defendants filed motions to dismiss and motions for summary judgment. The motions were called on for hearing on May 2, 1969, before the undersigned in Chambers at Clinton, North Carolina. At that time, the Court denied each of the defendants' motions. This opinion is an elaboration of the Court's reasons for overruling the motions filed by the State Board of Education and the State Superintendent of Public Instruction made orally at that time.

The ultimate question raised by the motions filed by the State Board of Education and the State Superintendent of Public Instruction is whether they, in addition to local officials, have an affirmative obligation under the Fourteenth Amendment to take action to remove all remaining vestiges of the dual school system in Johnston County—and other administrative units throughout the state—which was established and required by the Constitution and laws of the State of North Carolina prior to the decision of the Supreme Court in Brown v. Board of Education, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873 (1954).

Article IX, Section 8 of the Constitution of the State of North Carolina reads in part:

> "The general supervision and administration of the free public school system, and of the educational funds provided for the support thereof, * * * shall be vested in the State Board of Education."

Article III, Section 1 of the North Carolina Constitution provides that a Superintendent of Public Instruction shall be one of the members of the executive department of the State. Article III, Section 13 provides that the duties of the Superintendent of Public Instruction shall be prescribed by law.

Chapter 115 of the General Statutes of North Carolina, as amended, sets forth the duties of the State Board and State Superintendent of Public Instruction. Their duties and responsibility are wide ranging in the field of education.

Since Brown v. Board of Education, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873; (Brown II), 349 U.S. 294, 75 S.Ct. 753, 99 L.Ed. 1083, decided approximately fifteen years ago, state-imposed segregation in the public schools has been unconstitutional. The Supreme Court in Brown charged state officials with the affirmative duty to take all necessary steps to disestablish the dual systems then and there existing in many of the states. The Court has never waivered

from the principles enunciated in Brown. See, Cooper v. Aaron, 358 U.S. 1, 78 S.Ct. 1401, 3 L.Ed.2d 5, 19; Watson v. City of Memphis, 373 U.S. 526, 83 S.Ct. 1314, 10 L.Ed.2d 529; Goss v. Board of Education, 373 U.S. 683, 83 S.Ct. 1405, 10 L.Ed.2d 632; Griffin v. County School Board, 377 U.S. 218, 84 S.Ct. 1226, 12 L.Ed.2d 256; Calhoun v. Latimer, 377 U.S. 263, 84 S.Ct. 1235, 12 L.Ed.2d 288; Bradley v. School Board, 382 U.S. 103, 86 S.Ct. 224, 15 L.Ed.2d 187; Rogers v. Paul, 382 U.S. 198, 86 S.Ct. 358, 15 L.Ed.2d 265; Green v. School Board of New Kent County, 391 U.S. 430, 88 S.Ct. 1689, 20 L.Ed.2d 716; Raney v. Board of Education of the Gould School District, 391 U.S. 443, 88 S.Ct. 1697, 20 L.Ed.2d 727; Monroe v. Board of Commissioners, 391 U.S. 450, 88 S.Ct. 1700, 20 L.Ed.2d 733. In Cooper v. Aaron, supra, 358 U.S. at 7, 78 S.Ct. at 1404, the Court rephrased and repeated what Brown had required of the states.

> "State authorities were thus duty bound to devote every effort toward initiating desegregation and bringing about the elimination of racial discrimination in the public school system." (Emphasis added.)

In Green v. School Board of New Kent County, supra, 391 U.S. at 437–439, 88 S.Ct. at 1694, the Court repeated again what it had said before.

> "School boards such as the respondent then operating state-compelled dual systems were nevertheless clearly charged with the affirmative duty to take whatever steps might be necessary to convert to a unitary system in which racial discrimination would be eliminated root and branch."

These defendants maintain that the duty imposed by Brown upon the states is "affirmative" only as it applies to local school boards, but apparently, is only passive as it relates to other agencies of the State. This Court does not agree.

■ The State's duty to effect a transition from the dual system of schools formerly imposed by the Consti-

tution and laws of the State of North Carolina to a unitary non-racial school system falls not only upon the local school boards, but also upon the State Board of Education and the State Superintendent of Public Instruction. These defendants urge that the Court impose a duty upon the local school board, an agency which is furthest removed from the seat of sovereignty and at the same time to insulate the State Board of Education and the State Superintendent of Public Instruction from a similar constitutional duty and obligation. Such a distinction makes no sense in logic, frustrates rather than promotes the Supreme Court's mandate that the public schools be desegregated *"now"* and is without support in the law. The fact that the Supreme Court in Green directed its consideration to the constitutional duties of local school boards in no way limits the duties of other state officials and agencies.

The Supreme Court has, in fact, required that state agencies and officials other than local boards meet their obligation to disestablish the dual school system. Cooper v. Aaron, *supra*; Griffin v. School Board, *supra*. Congress, in the Civil Rights Act of 1964, defined the term "school board" to mean *"any* agency or agencies which administer a system of one or more public schools." (Emphasis added.) 42 U.S.C. § 2000c(d). Lower federal courts have also recognized that the mandate of *Brown* reaches state officials as well as local board members. In Lee v. Macon County Board of Education, 267 F. Supp. 458 (M.D.Ala.1967) (three-judge court), affirmed sub. nom. Wallace v. United States, 389 U.S. 215, 88 S.Ct. 415, 19 L.Ed.2d 422, the Court held that the Governor as President of the Alabama State Board of Education, the Alabama Board of Education, its individual members and the Secretary and Executive Officer of the Alabama Board of Education were proper party-defendants as they had both statutory authority to supervise the public schools in Alabama and had, in some instances, usurped the authority of local boards. 267 F.Supp. at 462. The Court is clear in holding that the state defendants had an affirmative duty to exercise their authority to the end that school segregation be eliminated; the case does not rest on the Court's finding that the defendants had actively resisted desegregation.

"In this area [faculty segregation], as in other areas herein discussed, there is an affirmative duty on the part of these defendants, as well as on the part of other school officials throughout the state, to desegregate staffs and faculties. This is also a constitutional duty apart from any federal regulatory scheme." 267 F. Supp. at 473.

In fact, the Court found that local school boards were not indispensable parties and placed the burden squarely upon the state officials to desegrate the public schools in Alabama. 267 F.Supp. at 479. The statutory powers of state officials for public education in Alabama are markedly similar to North Carolina.

The case of Franklin v. Quitman County Board of Education, 288 F.Supp. 509 (N.D.Miss.1968) is even more directly on point. There the Board of Supervisors of Quitman County, Mississippi and the Mississippi State Educational Finance Commission had been added as party-defendants when the plaintiffs had objected to the construction of a certain new school. When the case came on for hearing, many of the issues had become moot. However, Chief Judge Keady refused to dismiss as to the State Finance Commission, holding that it and all other state and local officials had a continuing obligation to insure that segregation in the schools was eliminated.

"The affirmative obligation to seek means of disestablishing state-imposed segregation must be shared by all agencies, or agents of the state, including Educational Finance Commission, who are charged by law with, and who exercise, official public school functions. Neutrality must be forsaken for an active, affirmative interest in carrying out constitutional

commands. Moreover, the Commission is, or may well be placed, in position to be of material aid to a local school district as it confronts complex, future building problems likely to result from the dual challenge presented by the demands of efficiency and desegregation. This court respects the statutory wisdom of imposing upon a local school district the initial burden for adopting and coming forward with a plan of building needs. And while such should here be the primary responsibility of the Quitman County Board of Education, Educational Finance Commission must actively assist the County Board of Education in all reasonable, proper and efficient ways to provide a plan satisfactory both to the County Board of Education and to Educational Finance Commission and consistent, of course, with the views expressed in this opinion." 288 F. Supp. at 519.

Judge Keady has accurately stated the law as it now applies to all agencies and officials whose actions bear upon education in those states where there is a continuing obligation to eradicate dual school systems. Nor is there anything unusual about assigning responsibility to those officials and agencies charged by Statute with some duty to act in areas affecting constitutional rights. In Bryant v. State Board of Assessment of State of North Carolina, 293 F. Supp. 1379 (E.D.N.C.1968) (three-judge court), the Court struck down a statute permitting racially separate tax lists. The plaintiffs had sued the State Board of Assessment, the Board of County Commissioners of Brunswick County and the local Tax Supervisor and Tax Collector. The State Board of Assessment had urged that its responsibilities were *de minimus* and was therefore not a proper party. This argument did not prevail.

"We reject the contention of the State Board of Assessment that it is not involved with the manner and mode in which the tax records of a county are maintained. The Board of Assessment concedes that it has authority to publish a pamphlet of instructions for the use of county tax officials (NCGS § 105–275 (2)), and that it has the duty of advising local tax officials (NCGS § 105–275 (1)). It also concedes that in its discretion it may prescribe the forms, books and records that shall be kept in the valuation and collection of taxes. The concessions destroy the contention." 293 F.Supp. 1382.

The State Board of Education and the State Superintendent are certainly sufficiently involved with public education in North Carolina to meet the requirements of *Bryant*.

In passing, it might be noted that the State's reaction to *Brown* has not been entirely neutral. In Hawkins, et al. v. North Carolina Board of Education; Edwin Gill, Treasurer of the State of North Carolina; and the Charlotte Mecklenburg Board of Education, 11 Race Relations Law Reporter 745 (W.D. N.C.1966), a three-judge court found unconstitutional several statutory and constitutional provisions enacted by the North Carolina General Assembly in reaction to *Brown*. (These enactments comprised what was known as the Pearsall Plan.) The Court found unconstitutional and enjoined the State Board of Education and State Treasurer from enforcing Article IX, Section 12 of the North Carolina Constitution and G.S. § 115–166 which allowed exemptions from compulsory school attendance; G.S. §§ 115–261 through 115–273, which provided for local option for closing schools; and G.S. §§ 115–274 through 115–295 which provided for educational expense grants. All of the provisions were found to have the purpose and effect of promoting segregation in the schools. See also Brown v. South Carolina State Board of Education, 296 F. Supp. 199 (D.S.C. May 31, 1968) affirmed, 393 U.S. 222, 89 S.Ct. 449, 21 L. Ed.2d 391 (1968): "A review of the record, including the historical background of the Act [a tuition grant Act], clearly reveals that the purpose, motive

and effect of the Act is to unconstitutionally circumvent the requirement first enunciated in Brown v. Board of Education of Topeka, Shawnee County, Kan., 347 U.S. 483, 74 S.Ct. 686, 98 L. Ed. 873 (1954), that the State of South Carolina not discriminate on the basis of race or color in its public educational system."

■ For the reasons set forth herein, the motions of the State Board of Education and the State Superintendent of Public Instruction to dismiss and for summary judgment must be denied. Plaintiffs have alleged that these defendants have actively discriminated against them in the administration and operation of the Johnston County schools. Proof of these allegations, if there be any, might well be relevant as to the kind of relief to be afforded, if any be required. Whether or not the State Board or State Superintendent has actively discriminated does not affect their burden to actively seek the desegregation of the public schools in North Carolina. In this case the burden rests upon these defendants, as well as upon the local school board "to come forward with a plan that promises realistically to work, and promises realistically to work now." Green v. School Board of New Kent County, *supra*, 391 U.S. at 439, 88 S.Ct. at 1694.