**Amos LUMPKIN**

v.

**Lamont SMITH, Warden, Georgia State Prison.**

**Civ. A. No. 12830.**

United States District Court,
N. D. Georgia,
Atlanta Division.

Feb. 13, 1970.

Amos Lumpkin, pro se.

John Corbett Peek, Jr., Peek, Whaley, Blackburn & Haldi, Atlanta, Ga., for plaintiff.

Bob Childers, Asst. Atty. Gen., State of Georgia, Atlanta, Ga., for defendant.

## ORDER

EDENFIELD, District Judge.

Petitioner, a state prisoner, has filed an application for habeas corpus relief from his conviction and life sentence for the offense of rape, imposed on June 16, 1967, in the Superior Court of Fulton County.

With the clarifications made by the evidentiary hearing before this court, it appears that petitioner rests his request for relief on three grounds: absence of counsel during lineup and an absence of fundamental fairness during the lineup; jury discrimination; and ineffective assistance of counsel, in violation of the Sixth and Fourteenth Amendments to the United States Constitution.

## I. LINEUP

First, petitioner contends that he had a right to counsel during a lineup, since the lineup, in the instant action, was a critical stage in the proceeding.

▮▮ It is now clear beyond doubt that an indigent must be informed of his right to counsel during any "critical stage" preceding his trial. What will be a critical stage will vary from case to case and circumstance to circumstance. Hamilton v. Alabama, 368 U.S. 52, 82 S.Ct. 157, 7 L.Ed.2d 114 (1961); White v. Maryland, 373 U.S. 59, 83 S.Ct. 1050, 10 L.Ed.2d 193 (1963). However, it was not until United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), that the Sixth Amendment guarantee of counsel was extended to lineups. The Supreme Court made it clear in Sto-vall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967), that Wade, supra, applied only prospectively to lineups taking place after June 12, 1967. Crume v. Beto, 383 F.2d 36, 38 (5th Cir. 1967). The lineups in the instant action occurred in April of 1967. As Stovall recognized, retroactive application of Wade would evoke chaos in the criminal justice system, would undercut justifiable reliance on the contrary principle followed unswervingly by all courts for years, and would be unnecessary to insure the fairness of all trials in which identification evidence was used, even though procured in the absence of counsel at lineup. Petitioner, in short, may not take advantage of Wade. At the time of his lineup, this stage in the pre-trial process was not considered critical and no right to representation by counsel attached.

Second, petitioner also urges that he was denied fundamental fairness in his lineups since he was subjected to multiple lineups and was picked out of a lineup by one Inez Martin for a crime different than that for which he was initially arrested.

▮ Without regard to the right to counsel, it has long been accepted that lineups must meet due process standards of fundamental fairness. Crume v. Beto, supra. Specifically, lineups must not be arranged in such a manner as to be overly suggestive as to the person actually pointed out by the witness or victim. Palmer v. Peyton, 359 F.2d 199 (4th Cir. 1966). There is no allegation that the multiple lineups led to the suggestion that petitioner was the rapist. Nor is any detail given as to the manner in which the multiple lineups were prejudicial. Indeed, the record indicates that Inez Martin picked petitioner from the first lineup she saw. While another lineup, at a different time, was arranged for Annie Neal Willis, another alleged victim of petitioner, that lineup had petitioner with six other males of his race, approximate size, and dress. (See Trial Transcript, at 38–39.) The mere fact that petitioner may have been arrested

for one offense and picked out of a line-up for another is irrelevant. Petitioner was placed in the lineup at which Inez Martin identified him as her assailant for the very reason that he was suspected of committing the crime of which she had complained. Certainly the fact that petitioner was previously arrested for another crime could not impose any unfairness.

Thus, considering the "totality of the circumstances", *Stovall*, supra, 388 U.S. at 302, 87 S.Ct. 1967, the lineups were not of such unfairness as to violate petitioner's constitutional rights.[1] Indeed no unfairness appears at all.

## II. JURY DISCRIMINATION

Petitioner, a Negro, contends that his jury was illegally constituted, in that the same method of jury selection was employed for petitioner's trial as was struck down by the United States Supreme Court in Whitus v. Georgia, 385 U.S. 545, 87 S.Ct. 643, 17 L.Ed.2d 599 (1967). Petitioner states that the jury list was selected from segregated tax digests with different color forms denoting different races, creating an illegal opportunity for discrimination on the part of the Fulton County Jury Commissioners.

 It has long been recognized that a conviction may not stand if based on an indictment from a grand jury or a verdict from a petit jury as to which members of the defendant's race were discriminatorily excluded. Strauder v. West Virginia, 100 U.S. 303, 25 L.Ed. 664 (1880); Pierre v. Louisiana, 306 U.S.

354, 59 S.Ct. 536, 83 L.Ed. 757 (1939). Regardless of the selection system employed, it must be struck down if it contains an element of racial discrimination. Avery v. Georgia, 345 U.S. 559, 73 S.Ct. 891, 97 L.Ed. 1244 (1953); Williams v. Georgia, 349 U.S. 375, 75 S.Ct. 814, 99 L.Ed. 1161 (1955). Justice, to be meaningful, must be colorblind. With these elementary principles in mind, we feel that petitioner's contentions cannot hold water.

First, it appears clear from a close study of the record[2] that the system of jury selection used in *Whitus* was *not* used in choosing petitioner's jury. The record shows that in selecting the jury panel for the May-June, 1967, criminal term the Jury Commissioners did initially use segregated tax returns, subsequently voided in *Whitus*, in making their mailings to prospective jurors. However, at the time the Commissioners had gotten to "G" in the alphabet, Judge Alverson informed the Commissioners that the system they were using was unconstitutional (Jones record at 7–9, 54). Upon the Judge's advice, all returns from the earlier mailings were disregarded completely (Jones record at 65) and the entire jury panel for May-June, 1967, was chosen by a totally non-racial questionnaire sent to all taxpayers on a computerized taxpayer list compiled by Data Processing. (Jones record at 24, 55, 66.) Jack L. Camp, Tax Commissioner of Fulton County, rather than sending over the different color tax returns, as before, sent over a list to the Jury Commissioners, passed through Data Processing, of

---

1. As noted in the court's order of October 20, 1969, in which we set a hearing in the instant action, petitioner also stated that during interrogation he was not informed of his right to counsel, under Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, 10 A.L.R. 3d 974 (1966). In petitioner's latest brief, following the hearing, this argument seems to have been abandoned. Well it should, since it appears conclusively from the record, that no evidence or testimony was elicited from peti-

tioner which in any way was used at trial. Petitioner was convicted from eyewitness testimony.

2. The court here refers to the transcript of the hearing before Judge Luther Alverson in Fulton Superior Court in the case of the State of Georgia v. Jesse Leon Jones. Counsel for both parties in the *instant action are in agreement* that the jury panel chosen in that case for the May-June, 1967, criminal term, was the same panel from which petitioner's jury was taken.

all those who had made tax returns in the County, without regard to race. (Jones record at 7–9.) Thus, while the old returns, which were blue or pink depending upon the race of the taxpayer, were kept in the Jury Commissioners' room, they were not referred to at any point, and would have been extremely difficult to use, in any event. (Jones record at 19, 22–23, 50–52, 54, 72–75.) After the jury list was compiled from the questionnaires, it was impossible to determine the race of those selected. (Jones record at 66, 69.) Therefore, the new system used created no opportunity for discrimination.

Second, use of the discredited method of jury selection employed in *Whitus* created the opportunity for discrimination, and the opportunity, when coupled with the significant disparity which was shown to exist between the percentage of Negroes on the tax digests of the County and the percentage on the jury panel from which Whitus' jury was taken, was held to constitute a prima facie case. The burden then shifted to the State to show that jury discrimination did not in fact exist. Unlike the striking disparities which existed in *Whitus,* in the instant action 15.7% of the taxpayers in the County were Negroes, while nearly 15% of the jury panel was made up of Negroes. Indeed, 35 of the 192 jurors initially empaneled were Negroes, an even greater percentage than the percentage of Negroes on the tax digests; however, seven were excused on their own request. (Jones record at 48–49.) These figures belie petitioner's allegations, indicating that any opportunity for discrimination which might have existed, *Whitus*, 385 U.S. at 552, 87 S.Ct. 643—and none seems possible under the new system employed—was left unexercised. Brown v. Allen, 344 U.S. 443, 73 S.Ct. 397, 97 L.Ed. 469 (1953); Swain v. Alabama, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965); Finkelstein, The Application of Statistical Decision Theo-

ry to the Jury Discrimination Cases, 80 Harv.L.Rev. 338 (1966).

### III. EFFECTIVE ASSISTANCE OF COUNSEL

■ Petitioner urges that his court-appointed attorney, Mr. Hugh Carney, failed to provide him effective assistance of counsel. While the Constitution does not speak directly about "effective" assistance, the Supreme Court engrafted this requirement in Powell v. Alabama, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932). Effective assistance must be considered in the context of representation at trial, on appeal, and during pretrial preparation. Petitioner's counsel stated in their brief that "the most significant element of petitioner's contentions in this regard [is] * * * the complete lack of pre-trial preparation by his counsel."

#### 1. *Preparation.*

■ Counsel for petitioner was appointed one week before petitioner's trial. In order to properly discharge his duties as court-appointed counsel, Mr. Carney must have had a reasonable time to prepare his defense. Mitchell v. United States, 104 U.S.App.D.C. 57, 259 F.2d 787 (1958), cert. denied, 358 U.S. 850, 79 S.Ct. 81, 3 L.Ed.2d 86; Brooks v. State of Texas, 381 F.2d 619 (5th Cir. 1967). At the hearing before this court, Mr. Carney indicated that he had moved for a continuance, but he did not state that the time allotted was insufficient to familiarize himself with the case and to fully investigate the charges. Calloway v. Powell, 393 F.2d 886 (5th Cir. 1968). It appears from the court's evidentiary hearing that Carney consulted with his client, although the duration is unclear,[3] talked with petitioner's wife in order to establish the existence of alibi witnesses, secured Cleveland Jackson as an alibi witness and brought him to trial in petitioner's behalf, held dis-

---

3. Mr. Carney stated that it is always his practice to interview his client immediately after appointment, in jail if necessary, but that he had no independent recollection in the instant case of whether he followed this normal practice or not.

cussions of the case with Mr. Bob Sparks, the Solicitor in the case, attempting to negotiate concerning a plea, and interviewed several prosecution witnesses, particularly the police officers involved in the case, the names of whom were secured from the Solicitor. Since petitioner's entire defense was based upon an alibi and on attempting to "breakdown" the prosecution's main witnesses, this preparation would seem sufficient. Worts v. Dutton, 395 F.2d 341 (5th Cir. 1968). *Compare* Roberts v. Dutton, 368 F.2d 465 (5th Cir. 1966). While petitioner stated that other alibi witnesses existed, according to petitioner's own testimony it does not appear that such witnesses could have established his whereabouts at the time of the actual offense. Moreover, petitioner did not offer the names of these witnesses at the habeas corpus hearing, to prove they would have testified for petitioner at his trial in state court. Williams v. Beto, 354 F.2d 698 (5th Cir. 1965). There is no showing of a failure to investigate an apparently substantial defense. Note, Effective Assistance of Counsel for the Indigent Defendant, 78 Harv.L.Rev. 1434, 1439 (1965).

### 2. *Performance of Counsel at Trial.*

Petitioner's counsel do not seriously question Mr. Carney's performance at trial. Yet this performance is in many ways a litmus test for the adequacy of his preparation. The court has read the entire transcript of the trial and finds that counsel for petitioner was well versed on the facts of the case, conducted a strong and knowledgeable cross-examination of the prosecutor's witnesses, made numerous objections to testimony and other matters (*see, e. g.,* Transcript at 1, 2, 3, 7, 14, 34, 51–52, 54, 56, 58, 60, 61, 62, 65, 66, 77, 79, 81–82, 95), moved for a mistrial twice (Transcript at 1, 81), brought both petitioner and an alibi witness to the stand, and in general conducted a strong defense. The trial was far from that mockery and farce necessary for a finding of ineffective assistance of counsel, nor was counsel's conduct in any regard shocking to the conscience of the

court. Odom v. United States, 377 F.2d 853, 858–859 (5th Cir. 1967); Mitchell v. United States, supra, 259 F.2d at 793; Wilburn Jackson v. Smith, No. 13029, N.D.Ga., Oct. 22, 1969. *Compare* Mac-Kenna v. Ellis, 280 F.2d 592 (5th Cir. 1960); Pineda v. Bailey, 340 F.2d 162 (5th Cir. 1965).

### 3. *Appeal.*

Under the evidence adduced at the hearing in this case, the alleged denial of petitioner's right to appeal has given the court some difficulty, primarily because the evidence is in conflict as to what transpired in this regard. The court concludes, however, that whichever version of the evidence is accepted the claims of petitioner must be denied.

The strongest version of what took place is the one which is contained in petitioner's petition in which he says, of his appointed trial counsel, that:

"Although, said counsel was appointed by the trial court he refused to file a notice of appeal because petitioner could not raise the $500 fee he was demanding for said service."

Accepting this version as true, the facts are almost identical with those in Worts v. Dutton, 395 F.2d 341 (5th Cir. 1968), where, in denying the writ, the Court said:

"The only fair inference from the facts of record is that appointed trial counsel advised appellant that he would appeal the case provided he was paid a fee and that appellant could not pay. The lawyer later discussed the matter with appellant's mother after appellant had requested his mother to talk with the lawyer. He again offered to appeal upon payment of a fee but advised the mother that the court would appoint a lawyer to represent appellant on appeal. There is no evidence whatever of any involvement by the court or any state official in the negotiations concerning the appeal or that the court or any official knew of appellant's desire to appeal."

Here, as in *Worts,* there is not the slightest evidence that the trial court

ever knew of petitioner's desire to appeal. In fact the case here is even stronger than *Worts,* for under the *evidence,* here there is no proof that even appointed counsel himself knew of such desire. For example, in his testimony (as distinguished from his petition) petitioner does not even claim that he advised counsel that he desired to appeal. He does testify that his wife did so, his contention being that his wife discussed an appeal with counsel, that counsel wanted a $500 fee to prosecute such appeal, and that the wife paid to counsel $150 of this amount. This, however, is denied by the wife, who gives an entirely different version. She says she never discussed an appeal with counsel, although she does say that petitioner's brother did. She also says that while she did pay counsel $150 this was done before trial and therefore had nothing to do with an appeal. Petitioner's brother did not testify at all and appointed counsel testified that to the best of his recollection the subject of appeal was never mentioned in connection with the case. Under this state of the record the court considers *Worts* controlling. *See also* Scarborough v. Wainwright, 404 F.2d 318 (5th Cir. 1968).

This might well end the discussion of this phase of the case but for one other case which, as the Fifth Circuit itself admits, takes a somewhat different approach. That is Wainwright v. Simpson, 360 F.2d 307 (5th Cir. 1966). In that case a Florida state prisoner contended that failure of appointed counsel to advise him of his right to appeal amounted to a denial of "effective counsel." There it also appeared, however, that while counsel himself considered petitioner's appeal meritorious, he nevertheless deliberately failed to move for a new trial or to advise petitioner of his rights. Apparently relying heavily on this last circumstance, the Court granted relief.

Admittedly that decision has caused the court some misgivings about the present petition. The court concludes, however, that the case is distinguishable on two grounds: In the first place, in that case appointed counsel conceded that he thought an appeal had merit. Here, there is nothing to suggest any meritorious ground of appeal. In fact the only complaint by petitioner with respect to errors committed at the trial has to do with the admissibility of evidence and is completely without merit. The petitioner was tried and convicted in the Superior Court of Fulton County, Georgia, for rape. At the trial, the District Attorney was permitted to introduce evidence of other rapes by the defendant under substantially similar circumstances. So far as this court knows, it has been uniformly and almost universally held, particularly with respect to sex offenses, that proof that other similar offenses have been committed under substantially the same circumstances is admissible as showing modus operandi or "bent of mind." Aside from this contention by petitioner, there is not the slightest suggestion that in this case an appeal would have been meritorious or that in failing to prosecute an appeal or advise his client the attorney in any way "abdicated his function" or deprived his client of the aid of counsel at a critical stage of the proceeding.

There is another fact which would likewise appear to distinguish Wainwright v. Simpson, supra, at least insofar as conduct of counsel is concerned. That case arose under the laws of Florida. The court is not sufficiently conversant with Florida law to know what is required of appointed trial counsel under Florida law, nor does the court know whether an appointment for trial in that state would continue through an appeal, if necessary. The court is familiar, however, with the Georgia rule and the Georgia practice in this regard. Under Georgia law appointment of trial counsel for an indigent defendant is for trial only, and an appointment of counsel for an appeal requires a separate appointment (and incidentally involves a separate method of compensation) even though the court should happen to reappoint the same attorney. Under this system it appears clear to the court that

in the present case when the trial was over appointed trial counsel had fully discharged his obligation and, at least in the absence of a request and in the absence of knowledge that an appeal was meritorious, he had a right to assume he owed no duty to petitioner to affirmatively pursue the matter further.

 It is, of course, axiomatic that every lawyer, whether appointed or retained, must bring to the attention and to the defense of his client every right, every fact, and every circumstance within his knowledge or which appears to be available in his client's behalf. Under the facts of *Simpson* the attorney simply "abdicated" this duty, as the Court found. Under the facts of this case there is nothing to suggest that he did. So far as appears the attorney neither knew of any ground of appeal or that his client wanted one. For this reason, and under the facts of this record, the court adopts the approach of *Worts* and *Scarborough* over that of *Simpson*.

The petition for habeas corpus is denied.