44145. CARR v. THE STATE.

ARGUED JANUARY 14, 1969—DECIDED APRIL 9, 1969.

*Kravitch & Hendrix, Aaron Kravitch, Lionel E. Drew, Jr.*, for appellant.

*J. Max Cheney, Solicitor General*, for appellee.

HALL, Judge. 1. The defendant failed to carry the burden of proving that the method of selection of the grand and traverse juries which indicted and tried this defendant resulted in the discriminatory exclusion of certain identifiable groups within the community. *Woods v. State*, 117 Ga. App. 546 (160 SE2d 922); *Whitus v. Georgia*, 385 U. S. 545 (87 SC 643, 17 LE2d 599). The trial court did not err in overruling the defendant's challenge to the array and motion to quash the indictment and to exclude the jurors drawn in the case.

2. There being no direct evidence of the alleged homicide, the question is whether the circumstantial evidence excluded every reasonable hypothesis except the guilt of the accused. The testimony of the State's witnesses is summarized below. The deceased, Morris, was injured on a Sunday evening and died about 30 hours later. On that evening the defendant, Carr, was at home on leave from Army duty in Vietnam. From about 7:30 p.m. he was with two friends, Holland and Jones. They went to the Midnighter Club about 8:15 p.m., had a beer, and stayed 15 or 20 minutes, and from there went to the Wagon Wheel, parked in front, went in and ordered a coca-cola. After they were served they came outside and Holland and Jones sat on a bench in front and the defendant stood beside the door of the Wagon Wheel. Morris walked in the door and as he was entering said something to Carr to which Carr responded. The two went inside, Morris carrying something about quart size in a brown paper sack. Holland heard them arguing and went inside. The proprietor of the Wagon Wheel, Hagan, heard Morris "mouthing" at somebody when he came in the door. He then heard Carr ask him, "Now, what were you saying?" and Morris cursed. It attracted Hagan's attention that they were having some words; he asked what was wrong. Morris was drunk so he told Carr to go on. Holland caught Carr around the waist and brought him outside, asked him what was wrong, received no answer, and tried to put him in the car. Morris walked out the front of the Wagon Wheel carrying the paper sack in one hand and a coca-cola in the other. The Wagon Wheel was at the corner of intersecting streets. Morris turned at the corner and walked down the street at the side of the place. There was a street light at the corner and beyond its light the street was dark. In "about two or three minutes" Carr broke loose from Holland and ran in the same direction as Morris. In "about a couple of minutes" Holland ran behind Carr. When Holland was at the front corner of the building Carr was near the back corner of the Wagon Wheel. (An exhibit was introduced showing the side of the building to be approximately 50 feet.) Holland never lost sight of Carr but did not see Morris at any time until he caught up with Carr where Morris was (80-85 feet from the

back corner of the Wagon Wheel, according to the exhibit). Carr had nothing in his hand and Holland did not see him stop running until he got to where Morris was, and after Carr stopped he did not see him touch, hit, run into, or kick Morris. He got to the scene a couple of minutes or a few seconds after Carr. When Holland stopped he saw Morris lying on the street with his eyes closed and a little blood on his nose, Carr was standing up over him. He asked Carr what happened to him. Carr responded "I didn't hit the man." Holland saw no blood on Carr's clothes or on his hands; he was shaking like he was nervous. Hagan went to the scene and when other people started coming Hagan took Carr inside the Wagon Wheel. When police officers came to the scene, Holland went inside the Wagon Wheel. Carr was still there but left before Holland. Holland left about 10 or 15 minutes after Carr, and after about 45 minutes saw Carr again at the Midnighter Club. One of the investigating officers while patrolling saw Carr later that evening at the Midnighter Club but didn't pay any attention; they had stopped the investigation at that time.

Hagan testified that kids and people were running down the street, and he went out the back door of the Wagon Wheel to the scene where Carr was standing 5 or 6 feet from Morris; he asked Carr what happened and he said, "I don't know. I didn't hit him." He saw no fighting and did not see anything that caused Morris to be on the ground. He told Carr and Holland he was going to call the law, which he did. Carr and Holland went back in the Wagon Wheel with him, and Carr left after about 10 minutes; Carr was drinking, he was " 'bout drunk."

Police officers who went to the scene observed Morris lying in the street, breathing hard, with blood around his mouth, observed a torn paper sack with a jar broken to pieces that smelled like moonshine near Morris' head, and a broken coca-cola bottle. There was no blood on the paper sack. The officers swept the bag and glass off the street as rubbish. They made no investigation for fingerprints. The sheriff observed a spot of blood about 4 feet from the edge of the street after Morris had been removed. Morris was taken by ambulance to the hospital, where he arrived unconscious, in shock, having trouble breathing, bleeding from

the mouth and nose, spitting up blood, with loosened teeth, mild lacerations of the mouth, with an odor of alcohol. Morris was under the influence of liquor when a doctor checked him. X-ray revealed a 6-inch skull fracture on the side of the head. In the opinion of the doctor, his death was caused by brain damage from the fracture, which could have been caused by a blunt instrument or *from falling on the pavement.* The physician and a police officer who saw Morris at the hospital testified they would think he received more than one lick, but did not know.

The physician had known Morris for 25 years or longer, testified he had a bad history of alcoholism and a bad reputation for peacefulness when he was drinking. The physician had been called on to treat him when he showed signs of having been in fights, and had treated him a few months earlier when he fell against an automobile and broke his top spine in his neck.

The sheriff estimated that he had arrested Morris fifteen times on charges of being drunk and disorderly including one time a few days before his death on a complaint from his wife. Morris was an alcoholic, would get on sprees for a day or two or week at a time, and threatened to kill the sheriff every time he arrested him. Morris was 2 or 3 inches taller and 20 pounds heavier than the defendant.

On Tuesday at about noon the Claxton Chief of Police and a G. B. I. investigator went to Carr's home, asked him to come out and to go to the city hall with them, and they took him to the city hall and interrogated him, and the defendant made a statement.

The defendant presented five witnesses who testified that they had known him a long time and his reputation as an honest, peaceable, law-abiding citizen was good. The defendant was sworn as a witness, examined and cross examined and testified: He was 25 years old, had lived in Claxton all his life except for about three years, more than two of these being in the Army. After high school he attended Savannah State College more than two years. He served about 12 months in Vietnam with an airborne division, as a medical corpsman, except for 3 months when he was wounded and out of action. He stated at the trial, as he had in his statement to a police officer, that the evening of the

incident he had had some beer and about three shots of VO Canadian Club, and that he was not drunk. He stated that as Morris went in the door of the Wagon Wheel he told Carr "to get the hell from by the door" and when he was inside mumbled something back out the door. Carr went inside and Morris said to him "I ought to slap the hell out that nigger." Carr asked him what he said, Morris repeated the remark, Carr "told him not to call me that," and Morris cursed and they had a few words back and forth. Hagan asked what was wrong and asked Carr to go out. When he broke loose from Holland and started down the street he could not see Morris from the corner. He stopped about 2 or 3 feet from Morris' feet and saw him lying in the road, and shouted. Holland was 25 or 30 feet behind him. Both Holland and Hagan asked him what was wrong and he said "I don't know." He stayed in the Wagon Wheel until the police got to the scene, and then left in 10 or 15 minutes. He did not hit, strike, kick, push, knock, throw anything at Morris or harm him in any way. He did not know Morris. He had no disciplinary actions against him in the Army, received a good conduct medal, several other medals, and an honorable discharge.

To sustain a conviction on circumstantial evidence only, the State must prove facts that are not only consistent with the hypothesis of the guilt of the accused, but the facts proved must exclude every other reasonable hypothesis. When the circumstantial evidence supports more than one theory, one consistent with guilt and another with innocence, it does not exclude every other reasonable hypothesis except guilt and is not sufficient to prove the defendant's guilt beyond a reasonable doubt. *Code* § 38-109; *King v. State,* 86 Ga. 355 (12 SE 943); *Gresham v. State,* 150 Ga. 668 (104 SE 629); *Burgess v. State,* 164 Ga. 92 (137 SE 768); *Redwine v. State,* 207 Ga. 318, 324 (61 SE2d 481); *Jackson v. State,* 210 Ga. 303, 310 (79 SE2d 812); *Rodgers v. State,* 213 Ga. 797 (102 SE2d 10); *Patrick v. State,* 75 Ga. App. 687, 691 (44 SE2d 297); *Purser v. State,* 104 Ga. App. 728 (122 SE2d 749).

In this case there were some inconsistencies between the testimony of Holland, who testified to seeing more than any other witness, and Hagan and the defendant, as shown in the above

summaries. Assuming that the testimony most favorable to the defendant were discredited, and assuming that the circumstantial evidence reasonably supports the hypothesis that Carr struck Morris a blow that contributed to his death, it cannot be said that it excludes every other reasonable hypothesis as to the cause of Morris' injuries or death. Therefore the evidence was not sufficient to prove the defendant's guilt beyond a reasonable doubt. For this reason the trial court erred in denying the defendant's motion for new trial.

*Judgment reversed. Jordan, P. J., and Whitman, J., concur.*