Commonwealth *v.* Williams, Appellant.

353

Submitted March 20, 1972. Before WRIGHT, P. J.,
WATKINS, JACOBS, HOFFMAN, SPAULDING, CERCONE, and
PACKEL, JJ.

354

*Lee Mandell,* and *Charleston & Fenerty,* for appellant.

*Melvin Dildine* and *Milton M. Stein,* Assistant District Attorneys, *James D. Crawford,* Deputy District Attorney, *Richard A. Sprague,* First Assistant District Attorney, and *Arlen Specter,* District Attorney, for Commonwealth, appellee.

OPINION BY CERCONE, J., June 15, 1972:

This is an appeal from the lower court's refusal to grant appellant's motions for new trial and in arrest of judgment after conviction and sentence on seventeen separate indictments covering the offenses of riot by prisoner, riotous destruction of property, assault and battery, and aggravated assault and battery, all of which indictments arose out of defendant's participation in a riot which occurred in Holmesburg Prison on July 4, 1970.

Defendant presents numerous arguments all of which, after careful study and consideration, we have determined to be without merit.

Appellant first claims that the trial court refused extensive scope of voir dire examination and that this refusal constituted palpable abuse of discretion. Our study of the record and the application of governing law causes us to disagree with this argument. The trial

judge personally conducted the individual examination of the veniremen. He asked prospective jurors questions such as: "Now, it may appear from the evidence in this case that this matter has racial overtones, and it may also appear from some of the evidence in this case that the defendant was at the time of the occurrence incarcerated or committed to a County Prison. Would either one or both of those reasons cause you to be biased or prejudiced against the defendant and thus deprive him of a fair trial by your hands?" Each juror was asked: "Do you know of any reason in your personal life that would cause you to have any bias or prejudice against him whatsoever?" To each of these questions the jurors answered "No.". With regard to the jurors' ability to evaluate the credibility of police officers' testimony fairly without attaching any special weight to their testimony, a matter as to which defendant specifically complains, the trial court asked the jury panel as a group to indicate whether they had any relatives or close friends with any law enforcement agencies. Those who indicated in the affirmative were noted by the court and further questioned as to possible influence that relationship might have in evaluating the credibility of police witnesses. For example, the record shows one of the colloquies between the trial judge and a prospective juror to be as follows: "By the Court: Q. I overlooked this, Miss Latour while questioning you that you had indicated you are in some way related to a law enforcement officer, or police officer. Would you explain that to the court? A. A girlfriend of mine works for the F.B.I. She does clerical work. Q. Is she related to you? A. No, sir. Q. Is she a very close friend? A. She is a close friend. Q. Have you ever discussed her duties with her? A. No, sir. Q. Have you ever discussed the work of the Federal Bureau of Investigation with her? A. No, sir.

Q. Do you feel that this friendship would in any way influence your judgment in this case? A. No, sir. Q. It would be your duty to determine the credibility, the veracity, the truthfulness of each and every witness in this case that comes before you. Could you apply the same standard and test for all law enforcement officers that you would to any other citizen? A. Yes, sir. THE COURT: Very well." The voir dire was extensive enough to rule out any possible undue influence upon the jury of police testimony. We find no abuse of discretion by the court in its rulings on voir dire.

Nor can we find any systematic exclusion of Negroes from the panel of the petit jury as contended by defendant. The record indicates that of the first jury panel of thirty veniremen nine were Negroes, and that of the second panel of twenty-one veniremen six were Negroes. It was the burden of the defendant to prove the existence of purposeful discrimination with respect to excluding Negroes from the jury panel: *Whitus v. Georgia*, 385 U.S. 545, at 549-550 (1967). No proof of intentional design to exclude Negroes from the jury panel was shown by defendant. Our Supreme Court of Pennsylvania recently held in a case in which there had been no Negroes on the panel from which the jury to try defendant was chosen that there was no violation of defendant's constitutional rights since the system by which the prospective jurors were selected sought to have the jury panel fairly represent a cross-section of the community: *Commonwealth v. Carroll*, 443 Pa. 518 (1971).

As to the contention that the evidence was not sufficient to sustain the verdict of guilty on the charge of riot by prisoner, a reading of the evidence reveals this argument to be, as stated by the Commonwealth, "utterly and hopelessly unfounded". Defendant's participation in the prison riot and his serious criminal

conduct in that riot were unquestionably proved beyond a reasonable doubt by the Commonwealth's evidence.

Nor can we agree that there was error in the charge of the court with respect to the definition of the crime of riot by prisoner. In fact, a reading of the charge shows it to correspond to the instruction requested by the defendant. No exception was taken to the complained of definition of the trial court.

The evidence was also more than sufficient to prove beyond a reasonable doubt that defendant was guilty of the charges of assault by prisoner and of conspiracy to riot.

We find equally without merit defendant's argument that the specific crime of assault by prisoner (18 P.S. Sec. 4710.1) prevails over and merges into the general penal statutes defining assault and battery, aggravated assault and battery, and assault with intent to kill so that he could only be convicted on the charge of assault by prisoner. The elements of assault by prisoner are not irreconcilable with the elements of the crimes of assault, battery, aggravated assault and battery, and assault with intent to kill. For example, the element of battery required under 18 P.S. §§4708 and 4709 is not a necessary element of the crime of assault by prisoner nor is the intent to kill necessary to establish assault by prisoner under 18 P.S. §4710. Conversely, it is essential to the crime of assault by prisoner under 18 P.S. §4710.1 that a person be "committed to or confined in" a detention facility, jail or penal or correctional facility, though such confinement is certainly not a prerequisite to any of the other offenses in question. The statutory rules of construction, 46 P.S. §563, state: ". . . Whenever a general provision in a law shall be in conflict with a special provision in the same or another law, *the two shall be construed, if*

*possible, so that effect may be given to both.* If the conflict between the two provisions be irreconcilable, the special provisions shall prevail and shall be construed as an exception to the general provision, unless the general provision shall be enacted later and it shall be the manifest intention of the Legislature that such general provision shall prevail." (emphasis supplied) We determine that the special crime of assault by prisoner is reconcilable, and is not in conflict, with the other crimes involved, and that the special crime of assault by prisoner can be construed to give effect to it and to the other crimes charged against defendant.

The defendant also argues that the evidence was insufficient to sustain his conviction under the assault by prisoner statute in that at the time of the commission he was not sentenced to imprisonment for any term of years as required by the statute. The defendant, however, failed to make note of the fact that on March 2, 1970 the assault by prisoner statute was amended so as to define prisoner as: "Every person committed to or confined in any local or county detention facility, jail or prison or any State penal or correctional institution or other State penal or correctional facility, regardless of the reason for commitment or confinement. . . ." It is readily apparent that under said definition, in effect at the time of defendant's commission of the crime charged, defendant was "a prisoner" to which the assault by prisoner statute applied even though he was not at that time imprisoned under any sentence as formerly required by the statute.

We therefore affirm the lower court's denial of defendant's motions for new trial and in arrest of judgment and affirm the judgments of sentence imposed on all the indictments.