**James Wesley FULLER, Petitioner,**

v.

**J. D. COX, Superintendent Virginia State Penitentiary, Respondent.**

Civ. A. No. 70–C–25–D (Re).

United States District Court,
W. D. Virginia,
Danville Division.

March 7, 1973.

James P. Kent, Altavista, Va., for petitioner.

William A. Carter, III, Asst. Atty. Gen., Richmond, Va., for respondent.

OPINION

TURK, District Judge.

Petitioner is presently serving a twenty-eight (28) year sentence for robbery imposed on May 26, 1966, by the Corporation Court for the City of Danville, Virginia. Petitioner's several habeas corpus petitions filed in the state court were denied after a hearing on September 5, 1968, and on January 19, 1970. The Virginia Supreme Court of Appeals affirmed such denial by the lower state court. Having exhausted his state remedies, petitioner sought relief in this court, and in an opinion handed down on July 6, 1970, 315 F.Supp. 867, petitioner's several claims were denied on the basis of the evidence presented at the

previous state hearing. Thereafter, he appealed to the United States Court of Appeals for the Fourth Circuit which affirmed the opinion of the court as to all of the claims except the one which alleged that he had been indicted by a grand jury from which Blacks had been unconstitutionally excluded.

The Court of Appeals held that the evidence adduced at the 1968 State hearing was sufficient to establish a *prima facie* case of discrimination in the selection of the grand jury which indicted petitioner. This evidence was to the effect that only one of the seven members of thirty-three out of thirty-nine grand juries convened from January, 1960, through May, 1966, (the date of petitioner's indictment) was a Negro and that the racial composition of the other six grand juries was similar. There was also evidence that approximately 25% of the population of Danville was Black. Mr. Tucker, the Clerk of the Danville Corporation Court, was able to racially identify all but a few of the grand jurors for the years in question at the hearing below, this showing the presence of an opportunity to discriminate. The Court of Appeals held that such a "congruence of opportunity for systematic exclusion and a result consistent with systematic exclusion" established a *prima facie* case and shifted the burden to the State to disprove discrimination. Accordingly, the case was remanded to this court in order that the State be given an opportunity to rebut the *prima facie* case in an evidentiary hearing.

Such a hearing was held before this court on November 10, 1972, at which time the State sought to show a lack of discrimination in the racial composition of the grand juries in Danville, Virginia. The State presented census figures for the City of Danville in both 1960 and 1970. This data indicated that the percentage of Blacks between the ages of 21 and 70, which was the period of jury eligibility in Virginia, was 22.2% of the eligible jury population in 1960 and 20.3% of the population in 1970. From these statistics, the State argued that it was reasonable to assume that at the time of petitioner's indictment in 1966 the Black population of Danville that was eligible for jury service was approximately 21% rather than the 25% mentioned by the Court of Appeals.

Mr. Tucker, the Clerk for the Corporation Court of Danville, testified at the hearing that of the 47 grand juries that served from January, 1960, through January, 1967, 33 were composed of seven members, 13 of six, and 1 of five.[1] He stated that there was one Black on each of these grand juries. The reason that some of the grand juries had less than seven members according to Mr. Tucker was that a grand juror would occasionally be excused for a reason such as health or business, and time would not permit the picking of a replacement. The procedure followed by Judge Aiken was to empanel only one regular grand jury in September of each year, and personally appoint special grand jurors in the remaining months.[2] Mr. Tucker testified

[1.] Va.Code Ann. § 19.1–150. Number and qualifications of grand jurors.—A grand jury, regular and special, shall consist of not less than five nor more than seven persons. Each grand juror shall be a citizen of this State, twenty-one years of age, and shall have been a resident of this State one year and of the county or corporation in which the court is to be held six months, and in other respects a qualified juror, and, when the grand juror is for a circuit court of a county, not an inhabitant of a city, except in those cases in which the circuit court of the county has jurisdiction in the city, in which case the city shall be considered as a magisterial district, or the equivalent of a magisterial district, of the county for the purpose of the jury lists. (Code 1950, § 19–125; 1960, c. 366.)

[2.] Va.Code Ann. § 19.1–147. Grand juries; regular and special terms.—There may be a regular grand jury at one term in each year of the circuit courts of the counties and of the corporation or hustings courts of the corporations, to be designated by the judges of the courts, respectively, and special grand juries whenever ordered, as herein provided.
§ 19.1–148. When and how grand jurors to be selected and summoned; lists to be

that if a Black grand juror asked to be excused, Judge Aiken would appoint another Black as a replacement. Other testimony by Mr. Tucker indicated that no Black served as foreman of the grand jury during the period in question and the warrant against an accused that was presented to the grand jury contained a designation of the race of the accused.

From the testimony of Mr. Tucker and the census data of Danville that showed approximately 21% of the Black population of Danville eligible for grand jury duty, the State argued that statistically speaking a case of discrimination had not been made out. The argument is as follows: Of the 33 grand juries composed of seven members one of whom was Black, 14.3% of that grand jury is Black, but if two of the seven were Black then 28.6% of the grand jury would be Black; in the case of the 13 grand juries with six members one of whom was Black, 16.6% of that grand jury was Black, but with 2 Blacks the percentage would be 33.3%; and in the case of the 1 five man grand jury with one Black, 20% of the grand jury was Black and with an additional Black it would be 40%. From these figures it is argued by the State that the Court of Appeals was incorrect in finding a *prima facie* case of discrimination.

The State has also relied upon the case of Swain v. Alabama, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965) in which the Supreme Court in a six to three decision rejected petitioner's claim of racial discrimination in the composition of grand and petit juries in Talladega County, Alabama. The evidence in that case indicated that while Black males over 21 constituted 26% of all males in the county, only 10 to 15% of the grand and petit jury panels drawn from the jury box since 1953 had been Blacks, and there had been only a single instance in which the percentage was as high as 23%. But the evidence also indicated that Blacks had served on 80% of the grand juries selected, the number ranging from one to three. There had been four or five Blacks on the grand jury panel of 33 and two on the particu-

delivered to clerk.—The judges of such courts shall annually, in the month of June, July, or August, select from the citizens of each county of their respective circuits and in their several cities sixty persons twenty-one years of age and upwards, of honesty, intelligence and good demeanor and suitable in all respects to serve as grand jurors who shall except as hereinafter provided be the grand jurors for the county or city from which they are selected for twelve months next thereafter. Such jurors shall be selected in each county from the several magisterial districts of the county and in each city from the several wards of the city in proportion to the population thereof. The judge making the selection shall at once furnish to the clerk of his court in each county of his circuit or in his city a list of those selected for that county or city. The clerk, not more than twenty days before the commencement of each term of his court at which a regular grand jury is required, shall issue a venire facias to the sheriff of his county, or sergeant of the city, commanding him to summon not less than five nor more than seven of the persons selected as aforesaid (the number to be designated by the judge of the court

by an order entered of record) to be named in the writ to appear on the first day of the court to serve as grand jurors. § 19.1–149. When special grand jury may be ordered; by whom and how.—A special grand jury may be ordered at any time by a circuit court of a county or corporation, or corporation or hustings court of a corporation, or the judge thereof in vacation. The jurors shall be summoned from a list furnished by the judge. When a grand jury, regular or special, has been discharged, the court, during the term, may impanel another grand jury, which may be a special grand jury. A special grand jury may be summoned for and impanelled at a special term of the court as well as at a regular term.

It appears that Judge Aiken followed the somewhat unusual procedure of utilizing § 19.1–149 to the exclusion of § 19.1–148. Mr. Tucker testified to this court that Judge Aiken appointed a regular grand jury in September of each year, and then it was his practice to personally appoint special grand juries in the other months. (Transcript 11–12). Neither party has questioned the validity of his following such a procedure.

lar grand jury which indicted petitioner. The Court, on the basis of the above facts, held that a *prima facie* case of invidious discrimination had not been made out. But it is obvious that *Swain, supra* is factually distinguishable from the one before this court because in *Swain* there was no showing of token inclusion of Blacks as has been shown here. The Court stated as much in the opinion when it said "Moreover, we do not consider an average of six to eight Negroes on these panels as constituting forbidden token inclusion within the meaning of the cases in this Court." Id. at 206, 85 S.Ct. at 828. The Court further explained the case when it stated, "(i)t is not clear from the record that the commissioners even knew how many Negroes were in their respective areas, or on the jury roll or on the venires drawn from the jury box. The overall percentage disparity has been small, and reflects no studied attempt to include or exclude a specified number of Negroes." Id. at 209, 85 S.Ct. at 830.

It is thus apparent from a reading of *Swain* that the State's reliance on that case is misplaced. The issue in *Swain* concerned the small disparity between the number of Blacks serving on grand juries and the number of eligible Blacks in the county. The issue in the case before this court, on the other hand, concerns the consistent token inclusion of one Black on the grand juries. The State's evidence and particularly the statistical evidence has dealt with the question of the disparity between the eligible Black population of Danville and the

number of Black grand jurors, but such evidence does not meet the issue of token inclusion of Blacks; nor does it show, as the State has asserted, that a *prima facie* case of racial discrimination has not been made.

■■ The Court of Appeals in its decision remanding this case to this court stated that where there is "the congruence of opportunity for systematic exclusion and a result consistent with systematic exclusion," a *prima facie* case has been established. The fact that one and only one Black served the 47 grand juries in Danville, Virginia, between January, 1960, and May, 1966, leads to the inevitable conclusion that Judge Aiken was aware of the race of those persons he appointed for grand jury duty, and the opportunity for systematic exclusion is apparent. In addition to the opportunity, the result of one Black on 47 different grand juries is certainly a result consistent with systematic exclusion. Accordingly, the State's presentation of refined statistics does not demonstrate that a *prima facie* case has not been made.

Additionally, the State's evidence has not rebutted the plaintiff's *prima facie* case of invidious racial discrimination. Although the issue of token inclusion of Blacks on grand juries has not been squarely decided by the Supreme Court, the Constitutional parameters of what is permissible in the area of jury selection have been well developed by the Court in numerous decisions beginning almost a century ago.[3] The Court has consistent-

3. E., g., Strauder v. West Virginia, 100 U.S. 303, 25 L.Ed. 664 (1880) ; Neal v. Delaware, 103 U.S. 370, 26 L.Ed. 567 (1881) ; Brownfield v. South Carolina, 189 U.S. 426, 23 S.Ct. 513, 47 L.Ed. 882 (1903) ; Carter v. Texas, 177 U.S. 442, 20 S.Ct. 687, 44 L.Ed. 839 (1900) ; Norris v. Alabama, 294 U.S. 587, 55 S.Ct. 579, 79 L.Ed. 1074 (1935) ; Smith v. Texas, 311 U.S. 128, 61 S.Ct. 164, 85 L.Ed. 84 (1940) ; Hill v. Texas, 316 U.S. 400, 62 S.Ct. 1159, 86 L.Ed. 1559 (1942) ; Akins v. Texas, 325 U.S. 398, 65 S.Ct. 1276, 89 L.Ed. 1692 (1945) ; Thiel v. Southern Pacific Co., 328 U.S. 217, 66 S.Ct. 984, 90 L.Ed. 1181 (1946) ; Ballard v. United States, 329 U.S. 187, 67 S.Ct. 261, 91 L.Ed. 181 (1946) ; Cassell v. Texas, 339 U.S. 282, 70 S.Ct. 629, 94 L.Ed. 839 (1950) ; Brown v. Allen, 344 U.S. 443, 73 S.Ct. 397, 97 L.Ed. 469 (1953) ; Avery v. Georgia, 345 U.S. 559, 73 S.Ct. 891, 97 L.Ed. 1244 (1953) ; Hernandez v. Texas, 347 U.S. 475, 74 S.Ct. 667, 98 L.Ed. 866 (1954) ; Eubanks v. Louisiana, 356 U.S. 584, 78 S.Ct. 970, 2 L.Ed.2d 991 (1958) ; Arnold v. North Carolina, 376 U.S. 773, 84 S.Ct. 1032, 12 L.Ed.2d 77 (1964) ; Swain v. Alabama, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d

ly held that the conviction of a Black cannot stand under the equal protection clause of the Fourteenth Amendment if it is based on an indictment of a grand jury from which Blacks were excluded by reason of their race. Alexander v. Louisiana, 405 U.S. 625, 628, 92 S.Ct. 1221, 31 L.Ed.2d 536 (1972).

A brief description of the development of the law in the area of grand jury discrimination will indicate that the resolution of this case is susceptible of only one result. Over 90 years ago the Supreme Court held that state statutes which excluded Blacks from jury service violated the Fourteenth Amendment.[4] From this it was a short step to invalidating the conviction of Blacks in cases in which there had been a total *de facto* exclusion of Blacks from grand juries despite the facial validity of the state statutes. The case of Norris v. Alabama, 294 U.S. 587, 55 S.Ct. 579, 79 L. Ed. 1074 (1935), was in this latter category. Despite the validity of the state statute involved, the evidence indicated that no Blacks had in fact been called for jury duty. The Court, quoting in part from the early case of Carter v. Texas, 177 U.S. 442, 20 S.Ct. 687, 44 L. Ed. 839 (1900), expressed the constitutional rule to be applied in such cases as follows:

> " 'Whenever by any action of a state, whether through its Legislature, through its courts, or through its executive or administrative officers, all persons of the African race are excluded, solely because of race or color, from serving as grand jurors in the criminal prosecution of a person of the African race, the equal protection of the laws is denied to him contrary to the Fourteenth Amendment to the Constitution of the United States'
> . . . And although the state stat-

ute defining the qualification may be fair on its face, the constitutional provision affords protection against action of the state through its administrative officers in effecting the prohibited discrimination." 294 U.S. at 589, 55 S.Ct. at 580.

The Court in *Norris* also set forth the rule that a *prima facie* case of grand jury discrimination could not be met by "mere generalities" referring to the rebuttal by the members of the jury board that Blacks had not purposely been excluded and that race and color had not been considered in making up the jury list.

The *Norris* case which involved the total exclusion of Blacks from jury lists was followed by challenges to partial exclusion. In Smith v. Texas, 311 U.S. 128, 61 S.Ct. 164, 85 L.Ed. 84 (1940) the evidence indicated that from 1931 until 1938 only 5 out of 384 grand jurors in Harris County, Texas had been Black, although over 20% of the population was Black, and almost 10% of the poll-tax payers were Black. In finding a violation of the Fourteenth Amendment to the Constitution, the Court stated the basic concept that the "jury be a body truly representative of the community." Id. at 130, 61 S.Ct. at 165. The Court went on to express the notion that subtle as well as overt discrimination would not be tolerated.

> "What the Fourteenth Amendment prohibits is racial discrimination in the selection of grand juries. Where jury commissioners limit those from whom grand juries are selected to their own personal acquaintances, discrimination can arise from commissioners who know no Negroes as well as from commissioners who know but eliminate them. If there has been discrimination, whether accomplished in-

759 (1965) ; Whitus v. Georgia, 385 U.S. 545, 87 S.Ct. 643, 17 L.Ed.2d 599 (1967) ; Carter v. Jury Commission, 396 U.S. 320, 90 S.Ct. 518, 24 L.Ed. 549 (1970) ; Turner v. Fouche, 396 U.S. 346, 90 S.Ct. 532, 24 L.Ed.2d 567 (1970) ; Alexander v.

Louisiana, 405 U.S. 625, 92 S.Ct. 1221, 31 L.Ed.2d 536 (1972).

4. Strauder v. West Virginia, 100 U.S. 303, 25 L.Ed. 664 (1880).

geniously or ingenuously, the conviction cannot stand." *Id.* at 132, 61 S. Ct. at 166.

Although adhering to the requirement that a jury be truly representative of the community, the Court repeatedly rejected any requirement that there be proportional representation of races on grand juries or that defendants be entitled to demand representatives of their racial inheritance on juries which indict or try them. *See, e. g.* Akins v. Texas, 325 U.S. 398, 403, 65 S.Ct. 1276, 89 L. Ed. 1692 (1945); Thomas v. Texas, 212 U.S. 278, 282, 29 S.Ct. 393, 53 L.Ed. 512 (1909). The Court in *Akins, supra,* at 404, 65 S.Ct. at 1279 explained that for a conviction to be invalidated on the basis of jury discrimination, a purpose to discriminate must be present, and such purpose may be proven by either the "systematic exclusion of eligible jurymen of the proscribed race or by unequal application of the law to such an extent as to show intentional discrimination."

The case of Cassell v. Texas, 339 U.S. 282, 70 S.Ct. 629, 94 L.Ed. 839 (1950) is of particular relevance because of the factual similarity to the case now before this court and because of what was said by the Supreme Court with regard to token inclusion of Blacks on grand juries. The facts were that between 1942 and 1947 (when petitioner was indicted) there were 21 grand juries in Dallas County, Texas. The percentage of Blacks on the grand jury panels compared to the percentage of eligible Blacks failed to make out a *prima facie* case of discrimination, but petitioner also asserted that the number of Blacks on each of the 21 consecutive grand juries had been limited to one. In the lead opinion by Mr. Justice Reed in which three other justices concurred it was stated:

"If . . . commissioners should limit proportionally the number of Negroes selected for grand-jury service, such limitation would violate our Constitution. Jurymen should be selected as individuals, on the basis of individual qualifications, and not as members of a race . . . Obviously the number of races and nationalities appearing in the ancestry of our citizens would make it impossible to meet a requirement of proportional representation. Similarly, since there can be no exclusion of Negroes as a race and no discrimination because of color, proportional limitation is not permissible. . . . An accused is entitled to have charges against him considered by a jury in the selection of which there has been neither inclusion nor exclusion because of race." *Id.* at 286, 287, 70 S.Ct. at 632.

Unfortunately, for purposes of the case before this court, the language quoted above was dictum because Mr. Justice Reed went on to decide the case on another ground. He found discrimination on the basis of the fact that the commissioners chose jurymen only from their acquaintances. The failure of the commissioners to familiarize themselves with the qualifications of the eligible jurors of the county was a violation of their duty and by limiting their selection to their acquaintances violated petitioner's Fourteenth Amendment rights.[5]

Mr. Justice Frankfurter writing for himself and two other justices concurred in the finding of discrimination. His opinion, like the lead opinion, casts light on the Constitutional violation inherent in the procedures followed by Judge Aiken in this case. Referring to the

---

5. The case before this court is perhaps susceptible to the inference that Judge Aiken did not familiarize himself with the qualifications of those persons eligible for grand jury duty. Unfortunately, Judge Aiken did not testify in the hearings below and died in November, 1971. The clerk of his court was not familiar with the standards he utilized in selecting grand jurors. For this reason it cannot be said with any certainty that he limited his selection of grand jurors to those persons with whom he was personally familiar.

fact that the commissioners misconceived their duty and were guided by the belief that one Black on the grand jury satisfied the prohibition against discrimination, he stated:

> "The prohibition of the Constitution against discrimination because of color does not require in and of itself the presence of a Negro on a jury. But neither is it satisfied by Negro representation limited to one. It is not a question of presence on a grand jury nor absence from it. The basis of selection cannot consciously take color into account. Such is the command of the Constitution." *Id.* at 295, 70 S.Ct. at 635.

In accord with what was said in *Cassell,* is the case of Brown v. Allen, 344 U.S. 443, 470–471, 73 S.Ct. 397, 414, 97 L.Ed. 469 (1950), in which it was said:

> "Discriminations against a race by barring or limiting citizens of that race from participation in jury service are odious to our thought and our Constitution. This has long been accepted as the law . . . . Of course, token summoning of Negroes for jury service does not comply with equal protection, Smith v. Texas, 311 U.S. 128, 61 S.Ct. 164, 85 L.Ed. 84."

Other cases have expressed the same rule. *E. g.,* Brooks v. Beto, 366 F.2d 1, 14 (5th Cir. 1966), "the attempt . . . to avoid the prima facie case arising from total exclusion by systematically including a token number of Negroes is sure to be condemned."; Scott v. Walker, 358 F.2d 561, 571 (5th Cir. 1966), "(t)he inclusion of a minimal or token number of Negroes on a jury list does not prevent the systematic exclusion rule from operating . . ."

Even accepting the proposition that Judge Aiken was not motivated by a discriminatory purpose and sought to achieve a constitutionally permissible result, the rule is well established that assertions of good faith will not overcome a statistical showing of an unconstitutional result. Norris v. Alabama, 294 U.S. 587, 598, 55 S.Ct. 579, 79 L.Ed. 1074 (1935); Smith v. Texas, 311 U.S. 128, 132, 61 S.Ct. 164, 85 L.Ed. 84 (1940); Witcher v. Peyton, 405 F.2d 725, 729 (4th Cir. 1969). In Brooks v. Beto, *supra,* at 13–14 it was stated:

> "On the other hand, though the Courts in speaking of the Commissioner's duty to familiarize themselves with the qualifications of members of significant racial groups have emphasized that proportional representation is not required, the good faith but misguided effort of commissioners who failed to heed this caveat and aim mechanically at proportional representation will likewise be condemned as a form of exclusion in the guise of limited inclusion. ˙ (citations omitted) In short, neither symbolic nor proportional representation is permitted. Representation must be the product of either 'the operation of an honest exercise of relevant judgment or the uncontrolled caprices of chance.' Cassell v. State of Texas, 399 U.S. 282, 291, 70 S.Ct. 629, 94 L.Ed. 839 (Frankfurter, J. concurring)."

The Fifth Circuit in its *en banc* decision in *Brooks* discussed the fact that the Constitution requires that in administering jury selection an effort must be made to achieve a fair cross section of the community, and that in doing so, jury selectors must become acquainted with the significant racial elements of the community. But although jury selectors might be forced to become aware of the race of prospective jurors, the court stated:

> "The dual requirements making awareness of race inevitable must be met, but this must never, simply never, . . . be applied to secure proportional representation. It must never, simply never, be applied to secure a predetermined or fixed limitation." 366 F.2d at 24.

From the foregoing discussion of a few of the cases dealing with racial discrimination in the area of grand jury selection procedures it is apparent that

the State has not rebutted petitioner's *prima facie* case. In Alexander v. Louisiana, *supra*, the Supreme Court expressed the rule in such cases as follows:

> "Once a *prima facie* case of invidious discrimination is established, the burden of proof shifts to the state to rebut the presumption of unconstitutional action by showing that permissible racially neutral selection criteria and procedures have produced the monochromatic result." 405 U.S. at 631–32, 92 S.Ct. at 1226.

The State has produced evidence which has narrowed the differential between the Black population of Danville and the Black representation on grand juries, but has not shown that the improbable result of having a single Black on 47 consecutive grand juries was the result of accident or chance. Such a result is susceptible of only one conclusion—that Judge Aiken consciously (albeit perhaps in a good faith attempt to satisfy Constitutional requirements) and deliberately utilized racial criteria to achieve token representation of Blacks on grand juries. The fact that the Clerk of Judge Aiken's court was able to racially identify all but a few of the grand jurors in the years in question either from personal acquaintance or their home address further supports such a conclusion.

■ In a case such as this where petitioner has laid bare unconstitutional procedures in the selection of grand jurors, his conviction cannot stand regardless of his guilt or innocence. The words of the Supreme Court in Hill v. Texas, *supra*, are worth repeating here:

> "Equal protection of the laws is something more than an abstract right. It is a command which the state must respect, the benefits of which every person may demand. Not the least merit of our constitutional system is that its safeguards extend to all— the least deserving as well as the most virtuous."

Prejudice in the individual case is not relevant when jury discrimination is shown. As Justice Frankfurter stated for the court in Ballard v. United States, 329 U.S. 187, 195, 67 S.Ct. 261, 265, 91 L.Ed. 181 (1946), a case involving the exclusion of women from a federal jury:

> "But reversible error does not depend on a showing of prejudice in the individual case. The evil lies in the admitted exclusion of an eligible class or group in the community in disregard of the prescribed standards of jury selection . . . The injury is not limited to the defendant—there is injury to the jury system, to the law as an institution, to the community at large, and to the democratic ideal reflected in . . . our courts."

Although this court must reverse petitioner's conviction, he need not go free if he is in fact guilty. The State may indict and try him again by constitutionally acceptable procedures. Hill v. Texas, 316 U.S. 400, 406, 62 S.Ct. 1159, 86 L.Ed. 1559 (1942); Whitus v. Georgia, 385 U.S. 545, 553, 87 S.Ct. 643, 17 L.Ed.2d 599 (1967).

For the aforementioned reasons, the Court will order petitioner's release unless within a reasonable time he is reindicted by a properly constituted grand jury and again brought to trial.