**STATE of Missouri, Plaintiff-Respondent,**

v.

**James Wesley NELSON, Defendant-Appellant.**

**No. 35990.**

Missouri Court of Appeals, St. Louis District, Division Two.

Dec. 16, 1975.

---

William J. Shaw, Public Defender, Timothy Braun, Mary E. Fiser, Asst. Public Defenders, Clayton, for defendant-appellant.

John C. Danforth, Atty. Gen., Preston Dean, Asst. Atty. Gen., Jefferson City, Courtney Goodman, Jr., Pros. Atty., George R. Westfall, Asst. Pros. Atty., Clayton, for plaintiff-respondent.

KELLY, Judge.

James Wesley Nelson, the appellant, was convicted in the Circuit Court for St. Louis County, on two counts of Robbery in the First Degree. Count two alleged and proved that the robbery charged therein was perpetrated by means of a dangerous and deadly weapon. §§ 560.120 and 560.135 RSMo 1969. He was sentenced to a term of seven years on the conviction under Count I and ten years on the conviction under Count II of the information in custody of the Missouri Department of Corrections,

each to run concurrently with the other. This appeal followed.

Appellant does not contest the sufficiency of the evidence to support his conviction on the charges but espouses two grounds for reversal thereof. His first complaint is the failure of the trial court to sustain his challenge to the jury panel because of the absence of any Blacks thereon, which he contends prejudiced his Sixth Amendment rights to an impartial trial by a jury of his peers. The second ground for reversal is the action of the trial court in overruling his motion for new trial on the basis of what he contends was newly discovered evidence unavailable at the time of trial and which would have established his innocence. We affirm.

The evidence on both Counts is that on July 23, 1973, appellant and two others—another Black man and a Black woman—entered the Pick-N-Save Grocery Store on Natural Bridge Road in St. Louis County, Missouri, and after one of the two men—the taller of the two—displayed a gun, appellant—the shorter of the two men—and the woman, went to the cash register at the check-out counter where the woman removed the money contents of the cash register drawer. Although it was later established how much money was taken, no witness testified to this amount. While the robbery of the grocery store was in progress, Wyllis Lennon, a customer in the store at the time, became aware of that fact, was then ordered by the appellant who was displaying a gun, to come over to where the appellant was standing, and when he arrived there, Mr. Lennon was ordered to lie down on the floor. While in that position his wallet containing approximately $250.00 was removed from his pocket. The three robbers then ran from the store and fled the scene. Two of the witnesses—Mr. Eugene Moore, the manager of

the store, and Wyllis Lennon—identified the appellant at trial as the shorter of the two Black males who participated in the robbery. The third witness, Dorothy Waite, testified that appellant's face resembled the shorter man she saw taking part in the robbery, but she testified that she could not say positively it was he.

Appellant presented alibi evidence although he himself did not testify. The jury denied the alibi testimony credibility.

■ Appellant's counsel called attention of the trial court to the composition of the jury panel prior to the commencement of the voir dire examination for selection of the jury to try the cause and pointed out that there was no Black among the 34 persons comprising the jury panel. The trial court stated that he would take judicial notice of that fact. A motion to discharge the panel and a request that a new panel, more representative of a cross-section of the inhabitants of St. Louis County and containing some Blacks be brought to the courtroom was made of the trial court. The motion and request were both overruled. Thereupon defense counsel moved for a mistrial and this too was denied. Voir dire examination of the jury panel commenced and a jury consisting of twelve jurors plus one alternate was selected from the 34 prospective jurors. The jurors were then empanelled and the cause proceeded to trial. No further objections were made to the make-up of the trial jury until raised in the motion for new trial filed by the appellant following the jury verdict. There the point was raised as a violation of the appellant's rights guaranteed by the Sixth Amendment to the United States Constitution to a trial by a jury of his peers representative of a cross-section of the inhabitants of the community.[1] This is the point we shall consider on appeal.

1. Appellant, for the first time, in the Argument portion of his brief in this court argues that rights guaranteed to him by Art. I, Sec. 18(a) of the Constitution of the State of Missouri, 1945, were violated for the same

reasons his federally guaranteed constitutional rights were allegedly violated. He has, therefore, failed to preserve this for review in this court by his failure to raise it in his motion for new trial. Rule 78.07 V.A.

■ Appellant cites as authority a line of cases commencing with *Strauder v. West Virginia,* 100 U.S. 303, 25 L.Ed. 664 (1879) for the principal that a state conviction cannot stand if it is based on the verdict of a petit jury from which Blacks were excluded by reason of their race because of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. Since *Duncan v. Louisiana,* 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968) the Sixth Amendment right to a trial by a petit jury has been made applicable to state trials by the Due Process Clause of the Fourteenth Amendment, and it is now clear that a defendant in a state criminal prosecution, regardless of his race, is constitutionally endowed with standing to challenge the system used to select the petit jury by which he was tried and convicted on the ground that members of any race were excluded arbitrarily or in a discriminatory manner therefrom by reason of his Due Process rights guaranteed by the Fourteenth Amendment to the United States Constitution. *Peters v. Kiff,* 407 U.S. 493, 504[2], 92 S.Ct. 2163, 33 L.Ed.2d 83 (1972).[2]

■ Appellant made no effort to adduce any evidence in the trial court concerning the manner or method by which the jury panel afforded him was selected or chosen either at the time he made his initial objection to the composition of the jury panel nor in support of this point as presented in his motion for new trial on those grounds. He rested his point there, as he has here, on the sole basis that the absence of Blacks from the jury panel from which the petit jury was selected to try his case, created a presumption that their absence was due to discrimination by reason of race and it was then the burden of the State to reverse that presumption. In support of his argument

he relies on *Whitus v. Georgia,* 385 U.S. 545, 87 S.Ct. 643, 17 L.Ed.2d 599 (1967) and *Avery v. Georgia,* 345 U.S. 559, 73 S.Ct. 891, 97 L.Ed. 1244 (1953). Both of those cases were decided in the context of *evidence* clearly establishing the discriminatory practices of Georgia jury commissioners whereby Blacks were excluded from serving on both grand and petit juries in that state. *Whitus,* supra, l.c. 385 U.S. 550, 87 S.Ct. at 646, held that the burden was on the petitioner in a habeas corpus proceeding "to prove the existence of purposeful discrimination," i. e., to make a prima facie showing, and once this was done, the burden shifts to the respondent to overcome the prima facie case made by the petitioner. In *Avery,* supra, the record contained evidence adduced in the trial court by the defendant in support of his challenge to the array of the petit jurors elected to try his case on the grounds of discrimination in the selection process and the use of different color tickets for Black and White citizens whose names were taken from the county tax returns and then placed in the jury box from whence the array was picked. These circumstances taken together with the fact that there was not a single Black among the panel of sixty jurors in the array was the basis for the court's conclusion that a prima facie case of discrimination had been established by the defendant, that the burden then shifted to the prosecution to overcome that prima facie case, and in view of the evidence in the record, the state had failed to meet its burden.

Because of the absence of any evidence whatsoever as to the manner or method by which the thirty-four member jury panel in this case was selected, we find that those cases are not controlling here, and that the appellant did not make a prima facie case in the first instance so that the burden never

M.R. However, for the same reasons we have denied his claim of a violation of his Sixth Amendment rights we would deny this claim had it been properly preserved.

2. *Peters v. Kiff,* supra, was not decided on the basis of *Duncan v. Louisiana,* supra, because Peters' indictment by the grand

jury, his trial and conviction by the petit jury preceded the Duncan decision which was held to apply retrospectively only in *DeStefano v. Woods,* 392 U.S. 631, 88 S.Ct. 2093, 20 L.Ed.2d 1308 (1968). Peters rested on the Due Process Clause of the Fourteenth Amendment alone.

shifted to the state to overcome a prima facie case of discrimination in the selection of the jury panel afforded defendant. We find no error and hold that on the basis of the record before it the trial court correctly denied appellant's motions and request for mistrial.

Appellant's second point is that the trial court erred in overruling his motion for a new trial on the grounds of newly discovered evidence which was not available to him at the time of trial and which would establish his innocence of the charges for which he was convicted.

An evidentiary hearing in support of this point as raised in appellant's motion for new trial was held in the trial court prior to the ruling on his motion for new trial. One witness, Jerome Whitfield, was produced and gave testimony in support of the motion. This witness' testimony, reduced to its essentials, was that he and another man known to him as "John Doe" had perpetrated the robbery of the Pick-N-Save Grocery Store on the 23rd of July, 1973; that appellant did not participate in the robbery; that between the time he had pleaded guilty to the robbery and while a pre-sentence investigation was being conducted, he had been asked by the appellant to testify on behalf of the appellant, but he had refused to do so for the reason that if he did so he feared he might thereby "blow" whatever chance he had of making probation. He did not testify at the appellant's trial. He was not granted probation. According to this witness he met "John Doe" only a couple of days before the holdup and he knew appellant for only 5 to 6 days prior to the robbery. Both he and "John Doe" had been to the appellant's home earlier the day of the robbery. He did not know where "John Doe" lived nor had he seen him since the day of the robbery. On cross-examination the witness testified that if he had been subpoenaed by the appellant to testify he would have claimed his Fifth Amendment rights but if the trial judge had ordered him to testify he would have done so and would have told what occurred at the gro-

cery store the day of the robbery. To the best of his knowledge "John Doe" had not been taken into custody for this robbery; neither had the woman who was also a participant.

Appellant relies on *State v. Harris*, 413 S.W.2d 244 (Mo.1967). Harris held, among other things, that for an appellant to obtain a new trial on the grounds of newly discovered evidence he must prove: (1) the evidence has come to his knowledge since the trial, (2) it was not owing to his want of due diligence that he did not discover it sooner, (3) that the evidence is so material that it would probably produce a different result on retrial, and (4) that it is not cumulative alone or merely serves to impeach the credibility of the witnesses against him. *Duncan v. State,* 520 S.W.2d 123, 124[4] (Mo.App.1975) has reiterated these criteria. By his own evidence appellant demonstrates that the evidence offered in support of his motion for new trial on the ground of newly discovered evidence does not meet the Harris criteria. His own witness testified that appellant requested that he testify in his behalf. Are we to conclude from this evidence that the appellant did not know prior to trial when this request was made what this witness' evidence would be? Appellant's counsel took the stand and testified that the appellant was aware of the fact that Mr. Whitfield would have testified at his trial if the presentence investigation was not hanging over his head at that time. The defense made no attempt to subpoena the witness nor did it at any time request a continuance for the purpose of obtaining his testimony. Furthermore, the brazenness of this witness in identifying his alleged accomplice as "John Doe" is a sufficient basis, in our opinion, for the trial court to disregard, in its entirety, his testimony and to conclude that this evidence if offered in a new trial would not produce a different result. For another case where a similar effort to set aside a conviction on these grounds failed, see *State v. Stegall*, 485 S.W.2d 414, 416[1] (Mo.1972).

We hold that the trial court did not err in denying appellant's motion for new trial on the grounds of newly discovered evidence.

We have examined those portions of the record as required by Rule 28.02 and find them to be sufficient.

We affirm.

CLEMENS, P. J., and STEWART, J., concur.